## IN THE UNITED STATES DISTRICT COURT OF THE
## EASTERN DISTRICT OF OKLAHOMA

HOLLY LYNCH and DAVID RAY )
LYNCH, as next of kin to DAVID CODY )
LYNCH, deceased, and as Co-Special )
Administrators of the ESTATE OF )
DAVID CODY LYNCH, )
           )
           Plaintiffs, )
           )
vs. )   Case No. CIV-16-247-JHP
           )
BOARD OF COUNTY COMMISSIONERS )
OF MUSKOGEE COUNTY, OKLAHOMA, )
ex rel. MUSKOGEE COUNTY SHERIFF'S )
DEPARTMENT, et al., )
           )
           Defendants. )

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment of Defendant Town of Porum [Dkt. # 74]. Plaintiffs, Holly Lynch and David Ray Lynch, as next of kin to David Cody Lynch, deceased, and Special Administrators of the Estate of David Cody Lynch, brought this action pursuant to 42 U.S.C. § 1983 alleging the conduct of Defendant violated Cody Lynch's rights under the United States Constitution and Oklahoma law. Specifically, Plaintiffs allege Defendant's police officers used force against Cody Lynch that was excessive in violation of the Fourth Amendment and unlawfully deprived him of substantive due process under the Fourteenth Amendment. Plaintiffs have also asserted violations of Cody Lynch's rights under the Oklahoma Government Tort Claims Act, Oklahoma Constitution, and common law. In its Motion for Summary Judgment, Defendant contends it is entitled to judgment on all claims that Plaintiffs have asserted against the Town. After consideration of the pleadings, affidavits, and briefs, the Court finds the Motion for Summary Judgment of Defendant Town of Porum should be GRANTED.

# BACKGROUND

## A. PROCEDURAL HISTORY

Plaintiffs commenced this action on May 16, 2016 in the District Court of Muskogee County. In their Petition, Plaintiffs named as defendants the Board of County Commissioners of Muskogee County *ex rel.* Muskogee County Sheriff's Department; Deputy Derek Apple of the Muskogee County Sheriff's Department; the Town of Warner *ex rel.* Warner Police Department; Officer Michael Shamblin of the Warner Police Department; the Town of Porum *ex rel.* Porum Police Department; and Officers Jerome Wildcat and Jack Denny of the Porum Police Department. Defendants jointly removed Plaintiffs' Petition to this Court on June 9, 2016. [Dkt. # 3]. On April 7, 2017, Defendant Town of Porum filed its Motion for Summary Judgment. [Dkt. # 74]. Plaintiffs filed their Response in Opposition to Defendant's Motion for Summary Judgment on October 27, 2017. [Dkt. # 160]. Defendant Town of Porum, along with its police officers, Defendants Jerome Wildcat and Jack Denny, jointly filed a Reply to Plaintiffs' Response on December 5, 2017. [Dkt. # 201]. Finally, Plaintiffs filed a Sur-Reply to the Reply on January 3, 2018. [Dkt. # 206].

## B. FACTUAL BACKGROUND

On April 3, 2015, David Cody Lynch ("Decedent" or "Cody Lynch") and his wife, Holly Lynch, attended a cookout at Holly's mother's house. Marshall Lynch (Decedent's brother), Alyssa Hafenbrack (Marshall's girlfriend), and their friend, Price Rogers, also attended the cookout. While at the cookout, Cody Lynch consumed alcohol and became intoxicated. It was later confirmed by his autopsy report that he was also under the influence of a significant amount of methamphetamine at the time of the subject incident. After the cookout, Decedent and his brother, Marshall, were doing "burnouts" and "donuts" in their trucks on a nearby highway. At some point,

Decedent lost control of his truck, went across the ditch, crashed through a fence, and got the truck stuck in a wire fence. Someone called the police to report this activity.

At approximately 11:35 p.m., Warner Police Officer Michael Shamblin responded to a call of a vehicle accident north of Warner, at State Hwy. 64 and E. 158 St. South, in Muskogee County, Oklahoma. Officer Shamblin arrived on the scene around 11:40 p.m. and saw two parked trucks. He spoke briefly to the two individual drivers and advised dispatch that Oklahoma Highway Patrol was not needed, but requested a deputy because one of the drivers, later identified as Cody Lynch, the Decedent, appeared to be intoxicated. Officer Shamblin asked Lynch numerous times to get out of the road and to step to the back of his vehicle where it was safe. Lynch eventually complied, and as Officer Shamblin was questioning him, he began to mumble incoherently. When Officer Shamblin leaned closer to Lynch to hear him, Lynch punched him in the face. A struggle ensued, and Lynch hit Officer Shamblin in the face at least two more times until the officer took him to the ground. The two rolled around on the ground struggling, and Officer Shamblin eventually got on top of Lynch, straddled his back, and tried to control Lynch's hands.

The two ended up in a ditch – their heads were positioned up hill and their knees and feet were in the ditch. The two were wet and muddy, and the officer had a hard time maintaining a hold on Lynch because he was slick. Officer Shamblin soon became aware of several people present at the scene of the struggle because he could see their feet above him. Lynch repeatedly yelled for them to attack Officer Shamblin, who felt that he was beginning to lose control over Lynch. As a result, he told Lynch that if he did not comply with his directives, he was going to deploy his taser. Lynch, however, continued to threaten and struggle with Officer Shamblin, so the officer tased him for one or two seconds. Lynch continued to struggle nonetheless. Officer Shamblin threw the taser off to the left, was finally able to get on top of Lynch, and control one of his hands. While he

was able to get one hand cuffed, Officer Shamblin could not get the other one cuffed because Lynch was lying on his stomach and his other hand was under his body. By this point, Officer Shamblin was exhausted. Officer Shamblin told the bystanders that he needed them to call 911 immediately or he was going to have to shoot Lynch. Alyssa Hafenbrack called 911 and held the phone down for Officer Shamblin to speak into it.

Around the same time, Marshall Lynch had called Decedent's wife, Holly Lynch, and told her that Decedent had been pulled over and was not cooperating with the police. Marshall asked her to come to the scene to calm Decedent down. She arrived at the scene about four minutes later. Marshall also called Decedent's father, Plaintiff, David Ray Lynch, who was at home at the time. Marshall advised Plaintiff of Cody Lynch's encounter with Officer Shamblin, and requested that he come to the scene of the incident. David Lynch and his friend, Ruby Lindsey, immediately went to the scene. It took them only a matter of minutes to get there. David Lynch approached Cody Lynch and Officer Shamblin, who were still struggling, put his knee on Cody's back, slapped him in the face, and said, "Boy, give him your damn hand." With David Lynch's assistance, Officer Shamblin was finally able to get both hands cuffed. Throughout these events, Cody Lynch continued to physically struggle and hinder Officer Shamblin's attempts to restrain him. Cody Lynch also continued to ask for the bystanders to help him with his struggle against the officer.

When Officer Shamblin spoke to the dispatcher on Hafenbrack's phone, he advised that he needed help and requested back up immediately. At approximately 11:50 p.m., Muskogee County Sheriff's Deputy Derek Apple, after responding to the original call, was notified by dispatch that Officer Shamblin requested that he hurry because he needed immediate help. Deputy Apple arrived at the scene close to 11:58 p.m. Deputy Apple saw that Officer Shamblin's duty belt had been broken during his struggle with Decedent and his radio, extra magazine, and taser were scattered

and missing. Upon arrival, Deputy Apple searched for Officer Shamblin's missing equipment, which took several minutes. Officers Jack Denny and Jerome Wildcat of the Porum Police Department responded to dispatch at approximately 11:54 p.m. and arrived at the scene around 11:58 p.m. Officers Denny and Wildcat then relieved an exhausted Officer Shamblin in attempting to maintain control of Lynch, who continued to struggle against their attempts. Officer Denny observed that Officer Shamblin was covered in mud and his eyes were almost completely swollen shut. It was later determined that Cody Lynch had fractured Officer Shamblin's left orbital eye socket.

The Porum Police Department has written policies in place directing its officers to "use only the minimum necessary force to effect an arrest and take a person into custody." At the time of the incident, Officers Denny and Wildcat of the Town of Porum Police Department were both CLEET certified law enforcement officers with extensive training in the use of force. In fact, there is no evidence in the record of any prior pattern of similar incidents involving Defendants Denny or Wildcat, or any other officer of the Porum Police Department. Based on their training and prior experience, Officer Denny placed one knee on Lynch's lower back and the other knee on the top of his shoulders while Officer Wildcat straddled Lynch's lower legs. Decedent continued to struggle, and Officer Denny repeatedly told him to stop fighting. While Officers Denny and Wildcat attempted to subdue Lynch, Officer Shamblin and Deputy Apple retrieved some additional restraints for transporting Lynch. The handcuffs placed on Lynch were to be attached to the waist belt, which would then attach to the chain between Lynch's ankles and hands. Lynch continued to be combative, yelling, cursing, and biting at Officer Denny's legs. There were two occasions when Officer Wildcat believed Lynch was grabbing for the firearm in his drop holster.

As the officers were finishing the security of the additional restraints, Decedent abruptly became unconscious. He had continued to struggle against the restraints and been quite vocal up to the time he fell silent. Decedent had stopped breathing and the officers could not get a pulse. The officers quickly began CPR on Decedent. Ruby Lindsey, who had CPR training, believed the officers were not performing CPR correctly, and requested that the officers remove the handcuffs and lay Decedent flat on his back. They did so, and she again began to perform CPR on Decedent with the assistance of the officers. Alyssa Hafenbrack, who was in nursing school, also assisted in trying to resuscitate Decedent. Muskogee County Sheriff's Deputy Robert Jackson, who had arrived at the scene around 12:06 a.m., notified dispatch to alert EMS at 12:07 a.m. after he heard someone say, "He's not breathing." Officer Shamblin and Hafenbrack continued to perform CPR on Decedent until EMS arrived. At approximately 12:14 a.m., EMS arrived and took over the scene. Decedent was then transported to the Eastar Hospital. Decedent was pronounced dead at the hospital at 1:07 a.m.

In the Medical Examiner's Report, Dr. Cheryl Niblo concluded that Decedent's cause of death was "asphyxia due to physical restraint." Dr. Niblo, however, stated under oath that she cannot point to objectively observable physical conditions to support a conclusion on Decedent's cause of death. Specifically, Dr. Niblo testified to and found no evidence of petechiae (pinpoint round spots) that are found in the vast majority of asphyxiation cases, visible bruising on Decedent's neck, muscle tears or cartilage damage to Decedent's neck, or any injury or trauma to Decendent's larynx, trachea, or pharynx. Moreover, Dr. Niblo found that Decedent's hyoid was intact, his airway unobstructed by dirt, grass or mud, and that his lungs were healthy and normal. Dr. Niblo further testified that the officers could not have known that Decedent had an enlarged heart or that he was under the influence of a significant amount of methamphetamine. Finally, Dr.

Niblo testified that any pressure on Decedent's back or neck was not hard enough to cause damage to the trachea or larynx, rupture any ligaments, or break any bones. Any such pressure, she testified, would not be hard enough to do anything but produce a small hemorrhage that, in itself, did not produce Decedent's death. In fact, Dr. Niblo calls Decedent's death a "perfect storm," meaning that many factors converged to produce a highly unusual and unexpected result.

## **DISCUSSION**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986); *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*, 477 U.S. at 322. A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry

for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251–252. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

To survive summary judgment, a plaintiff "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 327.

## A. Excessive Force Claim Under 42 U.S.C. § 1983

Plaintiffs assert their claims against Defendant Town of Porum under 42 U.S.C. § 1983. Specifically, Plaintiffs allege that Decedent's rights under the Fourth Amendment were violated by the alleged unlawful use of excessive force. Plaintiffs also assert a claim for the alleged violation of Decedent's right to substantive due process under the Fourteenth Amendment. Substantive due process claims, however, when predicated upon an alleged violation of a more particularized constitutional right, must be analyzed in terms of the more specific right. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, there is no need to address Plaintiffs' substantive due process claims apart from their excessive force claim. Therefore, the primary issue is whether Defendant's police officers used excessive force against Decedent in violation of the Fourth Amendment pursuant to any policy, practice or custom of the Porum Police Department and that force was the cause of Plaintiffs' alleged harm. Here, the undisputed facts show the

conduct of Defendant's police officers was not excessive force in violation of the Fourth Amendment.

Section 1983 creates no substantive civil rights, but rather only provides a procedural mechanism for enforcing rights established elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Gallegos v. City and Cnty. of Denver*, 984 F. 2d 358, 362 (10th Cir. 1993). *See also Miller v. Hawver*, 474 F. Supp. 441, 442, n.1 (D. Colo. 1979) (§ 1983 is not a general or common law tort claims statute). To sustain a § 1983 claim, Plaintiffs must present "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F. 2d 358, 363 (2nd Cir. 1987).

### 1. There is No Underlying Constitutional Violation Against Defendant's Police Officers, Jerome Wildcat and Jack Denny.

To establish liability against the Town of Porum, however, Plaintiffs must first show an underlying violation of Decedent's constitutional rights by some employee or office of Defendant before municipal liability can be imposed against the Town of Porum. In *Hinton v. City of Elwood*, the Tenth Circuit held that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." 997 F.2d 774, 782 (10th Cir. 1993) (citations omitted). This is so "regardless of whether the municipality's policies might have 'authorized' such harm." *Id*. (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, (1986)). *See also Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006) (a plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate that a municipal employee committed a constitutional violation); *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 958 (10th Cir. 2001) (defendants' actions did not violate constitutional rights and could not have caused the county to be held liable based on their actions).

Here, Plaintiffs have failed to demonstrate any underlying violation of Decedent's constitutional rights. To establish liability under § 1983 against Defendant's police officers, Wildcat and Denny, in their individual capacities, Plaintiffs must establish that the officers' actions were objectively unreasonable. *See Graham*, 490 U.S. at 393. Thus, the actions of an officer must be analyzed under the Fourth Amendment's objective reasonableness standard in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are often tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.* at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (citation and quotation marks omitted). The Tenth Circuit has repeatedly agreed with and affirmed the *Graham* court's reasoning on objective reasonableness. *See e.g., Fisher v. Las Cruces,* 584 F.3d 888, 895 (10th Cir. 2009) (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008)).

To determine whether a use of force employed was reasonable, courts must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interest at stake." *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005) (quoting *Graham*, 490 U.S. at 396). In balancing these interests, it is important to consider the following: (1) severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396. *See also Tennessee v. Garner,* 471 U.S. 1, 6 (1985). While it is important to consider these factors, the test ultimately rests on the question of "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Garner*, 471

U.S. at 8. *See also Summerland v. Cnty. of Livingston,* 240 Fed.Appx. 70, 76 (6th Cir. 2007) ("The ultimate question is 'whether the totality of the circumstances justified a particular search or seizure'") (quoting *Garner,* 471 U.S. at 8-9)); *Sevier v. City of Lawrence,* 60 F.3d 695, 699 (10th Cir. 1995) (holding objective reasonableness is based on the totality of the circumstances and the particular facts and circumstances of the case). "Thus, the excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

In the context of this particular case, many courts have found an officer putting his or her knees on the back of an arrestee to be objectively reasonable when the arrestee refuses to comply with orders and resists officers' attempts to restrain him. *See e.g., Wells v. City of Dearborn Heights,* 538 Fed.Appx. 631, 637-38 (6th Cir. 2013) (an officer kneeing a detainee who had failed to respond to commands was objectively reasonable); *Goodrich v. Everett,* 193 Fed.Appx. 551, 557 (6th Cir. 2006) (finding that a knee in the back of a subject that "was capable of violence and inclined to flee" was reasonable under the circumstances."); *Mongeau v. Jacksonville Sheriff's Office,* 197 Fed.Appx. 847, 851 (11th Cir. 2006) (finding that an officer's placement of his knee in the back of the arrestee in order to subdue him was objectively reasonable given the arrestee's previous resistance and risk of flight); *Jackson v. City of Bremerton,* 268 F.3d 646 (9th Cir. 2001) (an officer placing his knee on an arrestee's back to in order to control a rapidly evolving and escalating situation was reasonable). It is important to further note that "[p]artially restrained or not, someone who is attempting to commit felony battery against law enforcement officials, and experiencing some success, could certainly be said to pose an immediate threat to the safety of the

officers." *Estate of Escobedo v. Bender*, 600 F.3d 770 (7th Cir. 2010) (citing *Graham*, 490 U.S. at 397).

As a preliminary matter, Plaintiffs contend that Decedent was "hogtied," an illegal and excessive police tactic, and that the officers' continuous pressure on Decedent's back, shoulders, and neck caused him to die of asphyxia. There is insufficient evidence for either of Plaintiffs' contentions to survive summary judgment. First, the method for restraining Decedent was not a "hogtie." Under *Cruz v. City of Laramie*, 239 F.3d 1183 (10th Cir. 2011), a "hogtie" is defined as the "binding of the ankles to the wrist, behand the back, with 12 inches or less of separation." Here, the indisputable evidence shows the handcuffs placed on Decedent were attached to the waist belt, which was then attached to the chain between Decedent's ankles and hands. This method of attachment allows at least sixteen inches of space between the ankles and hands. There is nothing in the video that contradicts the simple understanding of the officers' method of handcuffing Decedent. Therefore, there is no dispute of material fact as to whether Decedent was hogtied.

Second, Plaintiffs have presented insufficient evidence to support a claim that Decedent died of "positional asphyxiation." Plaintiffs base this hypothesis on the medical examiner's report prepared by Dr. Cheryl Niblo of the Office of the Chief Medical Examiner. Dr. Niblo, however, stated under oath that Decedent's death was a "perfect storm," meaning that many factors converged to produce a highly unusual and unexpected result. Dr. Niblo agreed the officers, including Defendants Wildcat and Denny, could not have predicted or foreseen the convergence of the factors that led to Decedent's unexpected death, which included Decedent's large heart and level of intoxication. Consequently, the unavoidable conclusion is that Defendant's police officers acted reasonably based on the information they had about Decedent at the time of the incident. Plaintiffs own expert has testified that Defendants could not have foreseen the "perfect storm" that

resulted in Decedent's death. In these scenarios, it is imprudent to apply hindsight to what the officers specifically could have known at the time of the force. Therefore, there is no genuine dispute as to whether the pressure on Decedent's back, shoulders, and neck was excessive force.

Turning to the remaining aspects of the force in question, the evidence shows that Defendant's police officers, Wildcat and Denny, did not use force that was excessive in violation of the Fourth Amendment. Prior to the officers' arrival on the scene, Lynch and Shamblin were engaged in a continuous struggle, where the officer was attempting to restrain Decedent, and Decedent was actively resisting those efforts. By the time Officers Wildcat and Denny arrived, they encountered an officer in the midst of a protracted struggle, injured and covered in mud, utterly exhausted, and pleading for help. Officers Wildcat and Denny immediately tried to help Officer Shamblin restrain Cody Lynch, so that Officer Shamblin could disengage. As they attempted to help Officer Shamblin, Decedent continued to squirm, fight, curse, toss, and turn. He attempted to bite Officer Denny's pants leg. He was erratically grabbing at Officer Wildcat's drop leg holster. Decedent was not secured, and presented a threat to Defendant's officers. Neither Officer Denny nor Officer Wildcat ever heard Lynch say that he "could not breathe" or that he was having a heart attack. Further, the undisputed video evidence shows Decedent was talking and clearly breathing up until seconds before he became unconscious while the officers were installing the restraints. Ultimately, Decedent died as the result of an unusual "perfect storm" that Officers Wildcat and Denny could not have predicted.

The undisputed facts show neither officer acted in an objectively unreasonable manner. As to Officer Wildcat, Plaintiffs offer no evidence as to how he personally and directly participated in any use of force beyond straddling Decedent's legs for a few minutes. Straddling Decedent's legs is simply not enough to establish an excessive force claim against Officer Wildcat. As to

Officer Denny, there is similarly no evidence that he acted in an objectively unreasonable manner. It is undisputed that when the officers arrived on scene, they observed Officer Shamblin had been injured and that Decedent was combative and resistant. The officers repeatedly gave verbal commands to Decedent to stop resisting, but he refused to comply. Decedent's continuous actions, including both physical and verbal threats against the law enforcement officers, constituted an immediate threat to the safety of the officers. The situation was rapidly evolving, and the actions of Officers Wildcat and Denny using force against Decedent in order to restrain him was objectively reasonable.

Thus, Plaintiffs failed to establish any basis for holding Defendant's police officers liable for any of Cody Lynch's injuries. Specifically, Plaintiffs have presented insufficient evidence to raise a material dispute as to whether either officer used unconstitutionally excessive force in restraining Decedent. The actions of Defendants were objectively reasonable under the circumstances, and therefore did not violate Decedent's rights under the Fourth Amendment to the U.S. Constitution. There is nothing in the record to suggest otherwise. Therefore, because Plaintiffs have failed to establish any underlying violation by its police officers, there is no dispute of material fact that would prevent Defendant Town of Porum from being entitled to summary judgment with regard to Plaintiffs' excessive force claim under § 1983.

## 2. Municipality Liability

Municipal liability under § 1983 cannot be based upon the doctrine of *respondeat superior* or vicarious liability. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). Therefore, even if Plaintiffs could establish Defendant's police officers violated Decedent's constitutional rights, Defendant Town of Porum would still be entitled to summary judgment with regard to their § 1983 claim. In *Monell*, the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that

entity's own policies and customs. *Id.* at 694. Stated differently, the actions of the governmental entity must be the moving force behind the constitutional violation. *Id.* The Supreme Court has held that governmental liability for a constitutional violation "attaches where - and only where - the entity makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483, (1986). Municipalities may not be held liable in an official capacity simply because they "employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryant Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

Additionally, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Id.* at 406-07. Rather, *Monell* requires a plaintiff to establish that a policy or custom of the municipality exists and that it caused the alleged constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985). *See also Hinton*, 997 F.2d at 782. Additionally, proof of a single isolated incident of an alleged constitutional violation is not sufficient to establish that an unconstitutional policy or custom existed in an agency. *Tuttle*, 471 U.S. at 821. Accordingly, in order to establish municipal liability against the Town of Porum, Plaintiffs must show that a custom or policy of municipal defendant caused the alleged constitutional violation(s) or that an official with final policy-making authority for the Town personally participated in the alleged constitutional violation(s). *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (municipality cannot be held liable under § 1983 unless the act complained of is that of a final policymaker or a custom or usage is shown). Furthermore, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *Brown*, 520 U.S. at 409. The plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality was the "*moving force*" behind the injury alleged. *Id.* (emphasis added).

Here, there is no allegation or evidence that the proper official with final policy-making authority, the Chief of Porum Police Department, personally participated in the alleged constitutional violations. As such, Plaintiffs' claim of municipal liability must be premised upon the alleged existence of some policy, practice, or custom. In that regard, Plaintiffs allege that Defendant Town of Porum "failed to exercise reasonable care in training its law enforcement personnel regarding excessive force" and that this alleged failure to train "amounts to deliberate indifference to the rights of persons with whom its untrained law enforcement personnel come into contact." (Dkt. 3-2, p. 13, ¶¶ 89-92). The circumstances where inadequacy in training can be a basis for § 1983 liability, however, are limited. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

A municipality's culpability for a deprivation of rights is at its "most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citation omitted). Inadequacy in training may serve as the basis for municipal liability under § 1983 "only where the failure to train amounts to deliberate indifference" to inmate rights. *Canton*, 489 U.S. at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id*. at 389. To establish deliberate indifference to a need for training, Plaintiffs must show that the municipal defendant knew of and disregarded the substantial risk of inadequate training of his employees. *Id.* at 388. It is not enough to "show that there were general deficiencies in the county's training program for jailers." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). Rather, a plaintiff must "identify a specific deficiency" that was obvious and "closely related" to his injury. *Id*.

Here, Plaintiffs simply have not provided sufficient evidence of any inadequacies in the training of Defendant's police officers, Jack Denny and Jerome Wildcat. At all times relevant to Plaintiffs' claims, Defendants Denny and Wildcat were CLEET certified law enforcement officers

who had extensive training in the use of force. Furthermore, the Porum Police Department has written use of force and arrest policies which require deputies to use only such force as is necessary to affect the arrest and take the person into custody. The policies reiterate the Oklahoma Statutes' requirement that arrestees are not to be subjected to any more restraint than is necessary for his arrest and detention. As a result, both Plaintiffs' *Monell* and failure to train claims fail as a matter of law.

Plaintiffs also allege that the supervisors of Officers Denny and Wildcat had "knowledge of a prior pattern of similar incidents" [Dkt. 3-2, p. 14, ¶93-94]; that "there exists pattern of similar constitutional violations by the untrained and/or unsupervised [Porum PD] law enforcement personnel" [Dkt. 3-2, p. 14, ¶97]; that the municipal defendant "had actual and/or constructive notice that actions and/or failures to act...were substantially certain to result in a constitution violation" [Dkt. 3-2, p. 14, ¶98]; and that the municipal defendant "consciously or deliberately chose to disregard the risk of harm." [Dkt. 3-2, p. 14, ¶99]. The undisputed evidence, however, does not support Plaintiffs' allegations. Plaintiffs have no evidence of any prior pattern of similar incidents involving Officers Wildcat, Denny, or any other officer of the Porum Police Department. Accordingly, there is no factual basis for any inference of deliberate indifference on the part of the municipal defendant herein. Consequently, even if Plaintiffs could show an underlying constitutional violation, Defendant Town of Porum would nonetheless be entitled to summary judgment with regard to Plaintiffs' claim under § 1983.

### B. PLAINTIFFS' STATE LAW TORT CLAIMS

#### 1. Oklahoma Government Tort Claims Act

Plaintiffs have also asserted state law tort claims against Defendant Town of Porum under the Oklahoma Government Tort Claims Act. Specifically, Plaintiffs allege that Defendants acted

maliciously toward Decedent and outside the scope of their employment as officers for the Town of Porum Police Department. There is nothing in evidence indicating that either officer acted maliciously or outside the scope of his employment beyond mere conclusory speculation. There is, therefore, no genuine dispute that Defendants Wildcat and Denny are entitled to summary judgment on Plaintiffs' state law tort claims.

The Oklahoma Governmental Tort Claims Act ("OGTCA") is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity for its torts and the torts of its employees. *Fuller v. Odom*, 1987 OK 64, 741 P.2d 449, 451-53; 51 O.S. § 153(B). The OGTCA reaffirms the sovereign immunity of the state, its political subdivisions, and all its employees acting within the scope of their employment. 51 O.S. § 152.1(A). The state and its political subdivisions consent to suit only to the extent and in the manner provided in the Act. 51 O.S. § 152.1(B). *See also Salazar v. City of Okla. City*, 1999 OK 20, 976 P.2d 1056, 1065-66. The Town of Porum is a political subdivision under the OGTCA. 51 O.S. § 152(11)(c). Accordingly, the Town may be liable for its torts or the torts of its employees in situations where private persons or entities would also be liable under state law. *See Salazar*, 976 P.2d at 1066. In the OGTCA, the Oklahoma Legislature also provided several exemptions from the limited waiver of immunity liability for political subdivisions. 51 O.S. § 155. In other words, the state and its political subdivisions do not always consent to suit, but rather retain their essential sovereign immunity in certain cases. To that end, 51 O.S. § 155(6) affords the state or a political subdivision immunity for "the failure to provide, or the method of providing police, law enforcement or fire protection."

The Supreme Court of Oklahoma interpreted 51 O.S. § 155(6) in *Schmidt v. Grady Cnty.*, 1997 OK 92, 943 P.2d 595. In that case, an individual was employed as a deputy sheriff of Grady County, Oklahoma. While acting within the scope and during the course of his employment as

deputy sheriff, the deputy took the plaintiff into custody to protect her from harming herself or others and from being harmed by others. *Id.* at 596. The Court determined that the "Grady County deputy sheriff was acting as a police officer in relation to the plaintiff. The deputy was providing police protection to the plaintiff and public when she jumped or fell from the patrol car. Thus, any injury suffered by the plaintiff was a result of the county's method of providing police protection making the county immune from suit." *Id.* at 598. The court concluded, "We hold subsection 155(6) provides immunity for a political subdivision for liability for personal injuries resulting from the acts of its employees acting within the scope of their employment in taking into protective custody and transporting a person to the county jail." *Id. See also Kruzhkov v. State*, 2006 OK CIV APP 114, 144 P.3d 186, 192; *Vaughn v. City of Tulsa*, 1999 OK CIV APP 9, 974 P.2d 188; *Shockey v. City of Oklahoma City*, 1981 OK 94, 632 P.2d 406; *Samuel v. City of Broken Arrow, Okla.*, 506 Fed.Appx. 751 (10th Cir. 2012).

Here, Plaintiffs' own allegations show the Town of Porum is immune from suit under the OGTCA as a matter of law. Plaintiffs expressly alleged that Defendants' "actions to restrain Decedent were undertaken, in whole or in part, to protect Decedent from harming others and/or himself." [Dkt. 3-2, p. 11, ¶ 75]. Plaintiffs also expressly allege that, "In restraining Decedent, the Individual Defendants were purportedly engaged in the activity of providing police protection." [Dkt. 3-2, p. 11, ¶76]. Plaintiffs' allegations further undermine the lack of evidence in the record supporting a claim that Defendant's officers, Wildcat and Denny, acted outside the scope of their employment with the Porum Police Department. Clearly, these circumstances fit within the Supreme Court of Oklahoma's interpretation of 51 O.S. § 155(6). Accordingly, Defendant Town of Porum is immune from suit for Plaintiffs' excessive force claim pursuant to 51 O.S. § 155(6) and is entitled to dismissal thereof.

## 2. Plaintiffs' State Law Excessive Force Claim

Oklahoma uses the same "objective reasonableness" standard of care for state law tort excessive force claims as is used for federal excessive force claims. *See Morales v. City of Oklahoma City*, 2010 OK 9, 230 P.3d 869, 878-881. However, in addition to the three specific factors identified in *Graham*, *Morales* identifies four additional specific factors which must be considered as part of the totality of the circumstances: "(4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment." *Id.* at 880.

To summarize the night in question, Decedent, Cody Lynch, was drunk and intoxicated with methamphetamines when he physically assaulted Warner Police Officer Shamblin. The two wrestled and were still struggling in a damp ditch on the side of the road when Deputy Apple and Officers Wildcat and Denny arrived at the scene. From the time Officers Wildcat and Denny arrived on scene, Decedent was verbally assaultive and physically resisting all commands from law enforcement. Though he was handcuffed, Decedent was still perceived as a threat as he had assaulted an officer, had not been patted down for weapons, and was continuing to resist. The officers had just gotten Decedent's legs shackled together when he suffered some cardiac or respiratory event and stopped breathing. Defendant's officers immediately upon realizing this, turned Decedent over to his back, and attempted to resuscitate him. Decedent died and Plaintiffs bring suit alleging, inter alia, that the officers used excessive force against Decedent, which caused his death.

In consideration of all these factors, the actions of Defendant's police officers were still objectively reasonable for the same reasons set forth above. Throughout the event, all law

enforcement officers used reasonable methods to attempt to restrain Decedent. They acted pursuant to law enforcement policy, state and federal law with regard to attempting to secure Decedent after he had been involved in a drunk driving accident, assaulted an officer, and continued to resist their commands. Decedent's death, while tragic, was not caused by any of the Defendants. The situation was rapidly evolving, Decedent was actively resisting and unrestrained, and Defendant's police officers took the necessary measures to defuse the situation. There is no evidence that shows Defendants should have known about any health risk factors for Decedent. Instead, as the Medical Examiner states, it was an unforeseeable perfect storm that ultimately led to Decedent's death. A reasonable jury could not find that the Defendants failed to act reasonably under the circumstances. The Motion for Summary Judgment is granted on Plaintiffs' state law excessive force claims.

### 3. Intentional Infliction of Emotional Distress

Plaintiffs also assert a claim against Defendant Town of Porum under the OGTCA for the allegedly intentional infliction of emotional distress upon them during the arrest of Decedent by its police officers, Wildcat and Denny. The Town cannot be held liable for this claim, as such a claim necessarily excludes any good faith conduct by Officers Wildcat and Denny. *See* 51 O.S. § 153(A) ("The . . . political subdivision shall not be liable . . . for any act or omission of an employee acting outside the scope of the employee's employment"); 51 O.S. § 152(12) (defining "scope of employment" as . . . "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud").

In *Fehring v. State Ins. Fund,* the Supreme Court of Oklahoma held that when "the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct

on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit." 2001 OK 11, 19 P.3d 276, 283, *overruled on other grounds by Gowens v. Barstow*, 2015 OK 85, 364 P.3d 644 (citing *DeCorte v. Robinson*, 1998 OK 87, 969 P.2d 358, 362). The Supreme Court of Oklahoma went on to hold that the plaintiff in that case could not recover damages from the City for a claim of malicious prosecution. The Court's reasoning was that if the officer's actions were in bad faith, then he was outside the scope of his employment and the City would not be liable. *Id.* at 284. Courts have continually held that pursuant to the OGTCA, a political subdivision is not liable for the acts of its officers or employees when they are committed in bad faith or in a malicious manner. *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914, 917; *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065. Likewise, political subdivisions are immune from liability for tort claims of intentional infliction of emotional distress because the claim is one which requires proof of an element which necessarily excludes good faith conduct on the part of political subdivision employees. *See McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528, 531. Therefore, the Town of Porum is immune from suit for Plaintiffs' claim of intentional infliction of emotional distress and is entitled to dismissal of said claim.

Even if the Town were not immune under the OGTCA, Plaintiffs have still failed to establish the requisite elements of intentional infliction of emotional distress. To recover damages for intentional infliction of emotional distress in Oklahoma, a plaintiff must demonstrate that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Pub., Inc. v. Welton*, 2002 OK 50, 49 P.3d 732, 735. The second element of the tort "requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency,

and that such conduct is regarded as atrocious and utterly intolerable in a civilized community."
*Id*. (citation omitted). The fourth element of the tort "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it." *Id*. at 736 (citation and internal quotation marks omitted).

The Court acts as a gatekeeper to determine, in the first instance, whether there is sufficient evidence of extreme and outrageous conduct and sufficient evidence of severe emotional distress to warrant submitting the issue to a jury:

> The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

*Id*. at 735 (quoting *Breeden v. League Servs. Corp.*, 1978 OK 27, 575 P.2d 1374).

There is simply no evidence that Defendant's officers, Wildcat and Denny, acted in such an extreme and outrageous manner with regard to Decedent as to support such a claim. Indeed, Plaintiffs simply have no evidence that Defendant's officers used any excessive force against Decedent. Furthermore, there is no evidence that Plaintiffs have suffered severe emotional distress as a result of Officers Wildcat and Denny's actions. Moreover, Plaintiffs simply cannot recover under a theory of intentional infliction of emotional distress because they were bystanders who suffered no physical injuries in the alleged incident.

> Damages for mental anguish caused by witnessing the suffering of a third party may be compensable where the plaintiff also suffers physical injuries in the same accident which caused the third party's injuries. To support a cause of action for intentional infliction of emotional distress, it must be established that: 1) the plaintiff was directly physically involved in the incident; 2) the plaintiff was damaged from actually viewing the injury to another rather than from learning of

the accident later; and 3) a familial or other close personal relationship existed between the plaintiff and the party whose injury gave rise to the plaintiff's mental anguish.

*Kraszewski v. Baptist Med. Ctr. of Oklahoma, Inc.*, 1996 OK 141, 916 P.2d 241, 250. There is also no evidence or allegation that Plaintiffs were directly physically involved in the alleged use of excessive force against Decedent. Rather, Plaintiffs' allegations make it clear that they were bystanders who merely witnessed the incident "from a distance of several yards." Nor is there any evidence or allegation that Plaintiffs suffered any physical injury as a result of the incident. Moreover, Plaintiffs have filed suit as next of kin of the Decedent and as Co-Special Administrators of the Estate of the Decedent, and not on their own behalf. As such, Plaintiffs lack standing in this lawsuit, as filed, to assert a claim for intentional infliction of emotional distress on their own behalf.

The Town of Porum is immune from Plaintiffs' suit under the OGTCA for the intentional infliction of emotional distress. Even if Defendant Town was not immune, Plaintiffs have still failed to establish either the tort's elements or standing. Defendant is therefore entitled to judgment as matter of law as to Plaintiffs' claim.

### 4. Plaintiffs' Wrongful Death and Loss of Consortium Claims

Plaintiffs assert an additional state law claim for wrongful death against Defendant Town of Porum, as well as of loss of consortium claim on behalf of Plaintiff, Holly Lynch, as Decedent's wife. Neither claim may be maintained as a matter of law because each claim is without the necessary predicate claim. Namely, because Plaintiffs have presented evidence as to their other claims, their wrongful death and loss of consortium claims must also fail.

Oklahoma's wrongful death statute, 12 O.S. § 1053, reads in relevant part:

A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the

24

latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years.

Oklahoma's wrongful death statute "does not expand the scope of claims or the number of persons entitled to bring an action, but merely entitles someone to bring what the decedent could have brought himself." *Econ. Fire & Cas. Co. v. Faulkner*, 790 F. Supp. 1082, 1085 (W.D. Okla. 1991), *aff'd*, 951 F.2d 1258 (10th Cir. 1991). "Before there is liability under the wrongful death statute, the deceased must have had a right of recovery for the injury at the time of his death." *White v. Equity Fire & Cas. Co.*, 1991 OK CIV APP 131, 823 P.2d 953, 954 (citing *Haws v. Luethje,* 1972 OK 146, 503 P.2d 871, 874-875). Thus, whether Plaintiffs have a viable claim against Defendant depends entirely on whether Plaintiffs have an otherwise viable underlying claim against Defendant under state law.[1] Plaintiffs have failed to establish any state law basis under which to recover from Defendant. The Town, therefore, is entitled to summary judgment with regard to Plaintiffs' claims under the wrongful death statute.

Likewise, Holly Lynch's claim for loss of consortium is not an independent legal claim, but is rather a statutorily defined quantum of damages in Oklahoma's wrongful death statute and is entirely derivative of Decedent's right of recovery for his injury at the time of his death. *See* 12 O.S. § 1053(B); *Little v. State Farm Fire & Cas. Co.*, 1993 OK 102, 857 P.2d 65. Therefore, Defendant Town of Porum is entitled to summary judgment with regard to Holly Lynch's loss of

---

[1] As a matter of course, Plaintiffs' § 1983 claims cannot be brought under Oklahoma's wrongful death statute. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1506-07 (10th Cir. 1990).

consortium because there is no independent legal basis under which she can recover.[2] Defendant's Motion for Summary Judgment is granted as to these claims.

### C. Plaintiffs' *Bosh* Claim

In addition to their other state law claims, Plaintiffs also claim they are entitled to bring their claim directly under the Oklahoma Constitution. Plaintiffs, however, may not maintain a private right of action for excessive force under the Oklahoma Constitution. In *Bosh v. Cherokee Cnty. Bldg. Auth.*, 2013 OK 9, 305 P.3d 994, 1001, the Supreme Court of Oklahoma recognized a limited private right of action arising under OKLA. CONST. Art. 2, § 30 for claims of excessive force against pre-trial detainees. In *Perry v. City of Norman*, 2014 OK 119, 341 P.3d 689, however, the Supreme Court of Oklahoma found that *Bosh* does not provide a private right of action where a cause of action under the OGTCA is available. In *Perry*, the plaintiff claimed that police officers used excessive force against him during an arrest. The plaintiff asserted a *Bosh* claim alleging a violation of his rights under OKLA. CONST. Art. 2, § 30. The Supreme Court of Oklahoma noted that the inmate plaintiff in *Bosh* was completely barred from bringing suit under the OGTCA because it provided complete tort immunity for claims arising out of the operation of prison facilities. The court found that, unlike the situation in *Bosh*, employer liability for a police officer's use of excessive force during an arrest was well-settled under the OGTCA and held that: "There is no rationale requiring the extension of a *Bosh* excessive force action brought under OKLA. CONST. Art. 2, § 30 to his cause." *Id*. at 693.

The same rationale applies to Plaintiffs' Oklahoma constitutional claim. As *Perry* makes clear, liability for claims of police officers' excessive force (outside of a detention facility) is well-

---

[2] Moreover, because Plaintiff Holly Lynch has filed suit as next of kin of the Decedent and as Co-Special Administrator of the Estate of the Decedent, and not on her own behalf, she lacks standing to assert a claim for loss of consortium in this lawsuit, as filed.

settled under the OGTCA. Excessive force claims against police officers are not completely barred under the OGTCA. The rationale underlying *Bosh*, thus, does not apply and Plaintiffs do not have a private right of action for excessive force under OKLA. CONST. Art. 2, § 30. Furthermore, this Court is reluctant to expand upon the *Bosh* decision where the Supreme Court of Oklahoma has not expressed support for any such expansive reading. *Cf. Koch v. Juber*, CIV-13-0750-HE, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) (refusing to expand *Bosh* to provide a private right of action against individual employees under the Oklahoma Constitution). Accordingly, Defendant is entitled to summary judgment with regard to Plaintiffs' claim for excessive force under OKLA. CONST. Art. 2, § 30.

### D. Plaintiffs' Punitive Damages Claim

Last, Plaintiffs have asserted a punitive damages claim in this action. It is undisputed that a plaintiff is barred from obtaining punitive damages against a municipality under § 1983 and Oklahoma law. *City of Newport v. Fact Concerts Inc.,* 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Youren v. Tintic Sch. Dist.,* 343 F.3d 1296, 1307 (10th Cir. 2003); *Dill v. City of Edmond, Okla.,* 155 F.3d 1193, 1210 (10th Cir. 1998) (citing *Butcher v. City of McAlester,* 956 F.2d 973, 976 n.1 (10th Cir. 1992)). *See also* 51 O.S. § 154(C) ("No award for damages in an action or any claim against the state or political subdivision shall include punitive or exemplary damages."); *Murphy v. Spring,* No. 13-CV-96-TCK-PJC, 2013 WL 5172951, *6 (N.D. Okla. Sept. 12, 2013).

As a matter of law, Plaintiffs cannot recover punitive damages against the Town of Porum; therefore, summary judgment is granted.

## CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment of the Defendant Town of Porum, ex rel. the Porum Police Department, is GRANTED.

**IT IS SO ORDERED this 21st day of March, 2018.**

James H. Payne
United States District Judge
Eastern District of Oklahoma