**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

HOLLY LYNCH and DAVID RAY          )
LYNCH, as next of kin to DAVID CODY  )
LYNCH, deceased, and as Co-Special   )
Administrators of the ESTATE OF      )
DAVID CODY LYNCH,                    )
                                     )
           Plaintiffs,          )
                                     )
vs.                                  )          Case No. CIV-16-247-JHP
                                     )
BOARD OF COUNTY COMMISSIONERS        )
OF MUSKOGEE COUNTY, OKLAHOMA,        )
ex rel. MUSKOGEE COUNTY SHERIFF'S    )
DEPARTMENT, et al.,                  )
                                     )
           Defendants.          )

## OPINION AND ORDER

Before the Court is the Defendant Derek Apple, in his official and individual capacities', ("Apple") Motion for Summary Judgment filed April 7, 2017 [Dkt. 77]. The Court finds that Defendant Apple's Motion is granted.

## I. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The Court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Id.* In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994), "Even though all doubts must be resolved in (the nonmovant's) favor, allegations alone will not defeat summary judgment." *Cone* at 530 (citing *Celotex*, 477 U.S. at 324). *See also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Roemer v. Pub. Serv. Co. of Colo.*, 911 F. Supp. 464, 469 (D. Colo. 1996). Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## II. UNDISPUTED FACTS

Reviewing the evidentiary material submitted by the parties, the Court finds that there are no material disputes as to the following facts:

On April 3, 2015, the Decedent David Cody Lynch and his wife Plaintiff Holly Lynch attended a cookout at Holly's mother's house. His brother, Marshall Lynch, and his girlfriend Alyssa Hafenbrack, and their friend, Price Rogers, also attended the cookout. The Decedent consumed alcohol at the cookout and became intoxicated. The Decedent's autopsy report further indicates that he was under the influence of methamphetamine at the time of the subject incident. After the cookout, the Decedent and Marshall were doing "burnouts" and "donuts" in their trucks on the highway. The Decedent lost control of his truck, went through the ditch, crashed through a fence and got the truck stuck in another wire fence. His tailpipe caused a grass fire and someone called the police.

On April 3, 2015 at approximately 11:35 p.m., City of Warner Police Officer Michael Shamblin responded to a call of a vehicle accident north of Warner, at State Highway 64 and East 158 Street, South in Muskogee County, Oklahoma. Officer Shamblin arrived on the scene at approximately 11:40 p.m. and saw two parked trucks. He spoke briefly to the two individual drivers and advised dispatch that Oklahoma Highway Patrol was not needed, but that he would need a deputy because one of the drivers, later identified as the Decedent appeared to be intoxicated.

Officer Shamblin asked the Decedent numerous times to get out of the road and to step to the back of his vehicle where it was safe. The Decedent eventually complied and, as Officer Shamblin was questioning him, he began to mumble incoherently. Officer Shamblin leaned closer to the Decedent to hear him, and the Decedent then punched him in the face. A struggle ensued, and the Decedent hit Officer Shamblin in the face several more times until Shamblin

took him to the ground.  The two rolled around on the ground struggling, and eventually Officer Shamblin got on top of the Decedent, lying on top of his back, and was trying to control his hands.  They ended up in a ditch – their heads were positioned up hill and their knees and feet were in the ditch.  They were wet and muddy and Shamblin had a hard time maintaining a hold on the Decedent because he was slick.  Shamblin was finally able to get the Decedent's right hand cuffed but could not get the left one cuffed because the Decedent was face down and his left hand was under his body and because the Decedent continued to struggle.

Officer Shamblin became aware that there were several other people present because he could see their feet.  The Decedent repeatedly yelled for them to attack Shamblin.  The Decedent continued to struggle and Shamblin felt that he was beginning to lose what little control he had over him.  He advised the Decedent that if he did not comply with his directives to give him his other hand, he was going to deploy his taser.  The Decedent refused to comply with Officer Shamblin's directives and continued to threaten and struggle with Shamblin, so Shamblin tased him for one or two seconds.  The taser did not appear to have any effect on the Decedent who continued to struggle.  After tasing the Decedent, Officer Shamblin was finally able to get a hold of his left hand.  He threw the taser off to the left and grabbed the Decedent's left hand. However, he was not able to get it cuffed at that time and the Decedent continued to struggle.  At this point, Shamblin was exhausted.

Marshall had called Plaintiff Holly Lynch and told her that the Decedent had been pulled over and was not cooperating with the police.  He asked her to come to the scene to try and calm the Decedent down.  She arrived at the scene about four minutes later.  Shamblin told the

bystanders that he needed them to call 911 immediately or he was going to have to shoot the Decedent. Alyssa Hafenbrack called 911 and held the phone down for Shamblin to speak into it. Shamblin advised the dispatcher that he needed help and requested him to send back up immediately.

During the struggle, Marshall had also called the Decedent's father, Plaintiff David Ray Lynch, who was at home at the time, advised him of the Decedent's encounter with Officer Shamblin, and requested him to come to the scene of the incident. Mr. Lynch and his friend, Ruby Lindsey, immediately went to the scene. It took them only a matter of minutes to get there. The Decedent's father approached the Decedent and Officer Shamblin, who were still struggling, put his knee on the Decedent's back, slapped him in the face, and said, "Boy, give him your damn hand." With the father's assistance, Shamblin was able to get the Decedent's hands cuffed at that time. Throughout these events, the Decedent continued to struggle with Shamblin and to encourage bystanders to attack Shamblin.

Muskogee County Sheriff's Deputy Derek Apple responded to the original call and, at approximately 11:50 p.m., was notified by dispatch that Officer Shamblin requested him to hurry because he needed immediate help. Deputy Apple arrived at the scene at approximately 11:58 p.m. Officer Shamblin's duty belt had been broken during his struggle with the Decedent and his radio, extra magazine, and taser were scattered and missing. Upon arriving at the scene, Deputy Apple searched for Shamblin's missing equipment which took several minutes.

City of Porum Police officers Jack Denny and Jerome Wildcat responded to dispatch at approximately 11:54 p.m. and arrived at the scene at approximately 11:58 p.m. Upon arriving at

the scene, Officers Denny and Wildcat relieved an exhausted Shamblin in attempting to maintain control of the Decedent, who continued to struggle. Denny noted that Shamblin was covered in mud and his eyes were almost completely swollen shut. It was later determined that the Decedent had fractured Shamblin's left orbital eye socket. Officer Denny placed one knee on the Decedent's lower back and the other knee on the top of the Decedent's shoulders. Officer Wildcat straddled the Decedent's lower legs with his knees on the Decedent's calves. The Decedent continued to struggle and Denny repeatedly told him to stop fighting.

Officer Shamblin and Deputy Apple then went to the trunk of his patrol vehicle and retrieved some additional restraints for transporting the Decedent. When Deputy Apple returned with the restraints, the Decedent was still combative. He was kicking, writhing, yelling and cursing, he bit at Officer Denny's legs, and he attempted to grab Officer Wildcat's firearm from his drop holster. Deputy Apple then shackled the Decedent's ankles and stood on the chain so that he could not kick his legs.

As the other officers were finishing securing the additional restraints, the Decedent suddenly became unconscious. He had continued to struggle and vocalize up until that time. He had stopped breathing and the officers could not get a pulse. Officer Shamblin began CPR. Ruby Lindsey, who had CPR training, requested the officers to remove the handcuffs and lay the Decedent flat on his back. They did so and she again began to perform CPR on the Decedent with the assistance of the officers. Alyssa Hafenbrack, who was in nursing school, also assisted. Deputy Apple attempted to contact EMS through his radio, but he was not able to do so due to bad reception. Muskogee County Sheriff's Deputy Robert Jackson arrived at the scene at

approximately 12:06 a.m. After exiting his vehicle, he heard someone say "he's not breathing," so, Jackson notified dispatch to alert EMS at approximately 12:07 a.m. The officers, Hafenbrack, and Lindsey continued to perform CPR on the Decedent until EMS arrived.

EMS arrived at approximately 12:14 a.m., and took over the scene. The Decedent was then transported to the Eastar Hospital. The Decedent was pronounced dead at the hospital at approximately 1:07 a.m.

## III. ANALYSIS

### A. Plaintiffs' 42 U.S.C. § 1983 Claim

The Plaintiffs assert claims against Defendant Apple in his individual capacity arising under 42 U.S.C. § 1983.[1] Specifically, the Plaintiffs allege that the Decedent's rights under the Fourth Amendment were violated by the alleged unlawful use of excessive force.[2]

Section 1983 creates no substantive civil rights, but rather only provides a procedural mechanism for enforcing rights established elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Gallegos v. City and County of Denver*, 984 F. 2d 358, 362 (10th Cir. 1993). *See also Miller v. Hawver*, 474 F. Supp. 441, 442 n.1 (D. Colo. 1979) (§ 1983 is not a general or common law tort claims statute). To sustain a § 1983 claim, Plaintiff

---

[1] Plaintiffs' § 1983 claims against Defendant Apple in his official capacity have been dismissed. (Dkt. 60, p. 7).

[2] Plaintiffs also assert a claim for violation of the Decedent's right to substantive due process under the Fourteenth Amendment. However, a substantive due process claim based upon an alleged violation of a more particularized constitutional right must be analyzed in terms of the more specific right. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Accordingly, there is no need to address Plaintiffs' substantive due process claims separately from their excessive force claim.

must present "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F. 2d 358, 363 (2nd Cir. 1987). In that regard, Plaintiffs have clearly failed to state a § 1983 claim against the Defendants which is plausible on its face or which arises above a speculative level as required by *Twombly, supra.*

To establish liability under §1983 against Defendant Apple in his individual capacity, Plaintiffs must show that he acted under color of state law and that he personally participated in the alleged constitutional violation(s). *See Bruner v .Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (police officer who was present at scene but who did not assist or direct other officer in removing arrestee from vehicle did not violate Fourth Amendment; he did not "personally participate" in the use of the twist-lock restraint).

In *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865 (1989), the Supreme Court stated:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.... Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight...The reasonableness of a particular use of force must be

judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

"Thus, the excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

Here, Plaintiffs have no evidence that Defendant Apple used excessive force against the Decedent. The only evidence of any force used by Defendant Apple upon the Decedent was that he placed shackles upon the Decedent's ankles and stood on the chain for a brief period to prevent the Decedent from kicking his legs. However, such action was objectively reasonable in light of the totality of circumstances known to Defendant Apple. The Decedent had assaulted and fought with Officer Shamblin and had continually struggled against the officers attempting to effectuate his arrest, kicking, writhing, yelling and cursing, biting at officers, attempting to grab Officer Wildcat's weapon, and encouraging bystanders to attack Officer Shamblin. Under these circumstances, it was eminently reasonable for Defendant Apple to shackle and immobilize the Decedent's legs. Moreover, there is no evidence that Defendant Apple placed the shackles

on the Decedent's ankles in an excessively forceful manner.

Aside from placing shackles on the Decedent's ankles, Plaintiffs have no evidence that Defendant Apple used any force against the Decedent whatsoever. Plaintiffs claim that Apple used or facilitated the use of a taser on the Decedent. (Dkt. 159, p. 6). However, there is no evidence which supports that claim. Plaintiffs speculate that a taser was used based on the testimony of David Lynch and Ruby Lindsey. Mr. Lynch testified that while officers were on the Decedent's back he observed the Decedent make an "uh" sound and his body shake. (Dkt 144-18, 57:11-58:8). Ms. Lindsey testified that she saw "sparks," but she admits that she does not even know if a taser creates sparks. (Dkt. 144-19, 85:25-86:3). Regardless, there is no indication of any sparks in the video of the incident. Nor does the audio contain the distinctive clicking noise of a taser being deployed. (Dkt. 149-2). Ms. Lindsey claims that when she performed CPR on the Decedent she observed taser "strings," but she admits that she does not know when a taser was deployed. (Dkt. 144-19, 87:11-14).

Plaintiffs also insinuate that Defendant Apple was behaving in a nefarious manner. At one point in the videos, someone is heard asking, "Is that thing recording." (Dkt. 149-2 at 3:40-3:45). Plaintiffs claim that it is Apple who makes this statement and that this statement is an indication of concern about being recorded while tasing the Decedent. (Dkt. 157, p. 11, 25-27). However, it is not clear who is speaking in the video or what they were referring to. Even if it is Apple who is speaking, it would be pure speculation and conjecture to suggest that the comment was in reference to tasing.

Plaintiffs further claim that Defendant Apple lied about the taser. Plaintiffs allege that

Apple has given three different accounts of where the taser was found. (Dkt. 159, p. 12). However, this is not accurate. Apple maintained in a follow-up interview with OSBI and in his deposition that the taser was found under the right leg of the Decedent. (Dkt. 144-11, 17:9-23). Lastly, Plaintiffs further insinuate that Apple somehow interfered with the taser data such that it was corrupted. (Dkt. 157, p. 25). However, there is no evidence that Apple or any of the other officers attempted to interfere with or damage the taser. The taser's data could not be recovered for a number of reasons. In fact, the OSBI report on the taser traced the problems with this taser back to September 3, 2011, years before the events in this case. (Doc. 144-22, p. 183-186).

Plaintiffs argue that Defendant Apple can be held liable for a violation of the Decedent's constitutional rights under § 1983 because he acted "in concert [with the other officers] to effectuate and permit a **combination** of constitutionally-impermissible restraint techniques on Cody Lynch…" (Dkt. 157, p. 26, emphasis original). However, contrary to Plaintiffs' assertion, there is no evidence that Defendant Apple actively participated in concert with the other officers to effectuate a combination of unconstitutional restraint techniques.

Plaintiffs repeatedly assert that the Decedent was subjected to an unconstitutional hogtying. However, there was not hogtying in this case. The Tenth Circuit defines a "hog-tie restraint" as "the binding of the ankles to the wrists, behind the back, with 12 inches or less of separation." *Cruz v. City of Laramaie, Wyo.*, 239 F.3d 1183, 1188 (10th Cir. 2001). Here, Plaintiffs claim that the waist belt applied by Officer Shamblin only allows 7-16 inches of space between a suspect's hands and ankles. (Dkt. 157, p. 13). However, the evidence irrefutably demonstrates that the apparatus when applied allows 16" of space between the ankles and hands.

(Dkt. 148-8). Additionally, the video evidence provides no support for Plaintiffs' claim that the decedent was hogtied. (Dkt. 149-2). There is nothing in the video demonstrating that the Decedent's hands and feet were tied together. (Dkt. 149-2 4:00 – 5:56). Rather, the Decedent's ankles were secured to the restraint belt, not his wrists. Indeed, Plaintiff's own expert, Bob Prevot, testified himself that no hogtying occurred in this case. (Dkt. 185-1, at 211:10-14).

Furthermore, there is no evidence that the other officers used excessive force against the Decedent. Defendant Apple observed the other officers only using the amount of force that was necessary to control the Decedent who continued to struggle throughout the encounter. (Dkt. 144-11, p. 35:13-21; p. 66:14-17; p. 77:14-16; 78:7-17; p. 114:13-20; p. 116:16-21; p. 126:18 – p. 127:3; p. 127:8-11). Apple did not observe Decedent's face down in the ground (Dkt. 144-11, p. 68:25 – p. 69:1; p. 72:20-24; p. 73:21 – p. 74:2; p. 78:18-24; p. 116:22 – p. 117:1; p. 126:4-10; p. 126:15-17). Plaintiff David Lynch did not believe that any of the officers held the Decedent's head in the mud. (Dkt. 185-2, video of David Lynch at 8:50 to 9:06). Plaintiff's expert further testified that, during the period of time that Apple was present, he did not see evidence in the videos that Officer Denny, Officer Wildcat, Officer Shamblin, or Apple put their body on the Decedent's neck for the six (6) minute period prior to him going unconscious. (Dkt. 185-1, at 213:24 - 214:7).

Furthermore, even if there were some question of facts as to whether the other officers' actions may have constituted excessive force, there is no evidence that Defendant Apple acted in concert with them to effectuate such a use of force. Rather, Defendant Apple's role in the incident was limited to placing shackles upon the Decedent's ankles and standing on the chain

for a brief period to prevent the Decedent from kicking his legs.  Neither of the Plaintiffs can identify any action by Defendant Apple which caused or contributed to the Decedent's death. (Dkt. 144-17, p. 27:20-22; p. 57:20 – p. 58:9; p. 60:3-16; Dkt. 144-18, p. 136:17 – p. 137:7). The Deputy Medical Examiner, Dr. Niblo, also testified that Defendant Apple did not do anything that caused or contributed to the Decedent's death. (Dkt. 144-13, p. 180:15-24; p. 181:13 –p. 182:3).  Likewise, Plaintiffs' own use-of-force expert, Bob Prevot, had no criticisms of Defendant Apple's actions in this case. (Dkt. 185-1, at 208:18 - 209:1).

Plaintiffs also argue that Defendant Apple can be held liable for violation of the Decedent's constitutional rights under §1983 because he failed to render or obtain medical aid for the Decedent. (Dkt. 157, p. 31).  However, Plaintiffs' assertion in this regard is without factual support.  Contrary to Plaintiffs' contentions, the video evidence clearly shows Shamblin begin CPR on the Decedent.  Furthermore, when it appeared that the Decedent may not be breathing, Defendant Apple attempted to contact EMS through his radio, but he was not able to do so due to bad reception. As his lieutenant approached the scene he yelled for him to summon an ambulance and they worked to get EMS to the scene. (Dkt. 144-11, 26:2-23).

Plaintiffs further argue that Defendant Apple can be held liable for violation of the Decedent's constitutional rights under §1983 for the failure to intervene to stop the other officers' alleged use of excessive force against the Decedent. (Dkt. 157, p. 27).  However, Plaintiffs' "failure to intervene" claim was not raised in the Complaint (Dkt. 3-2) and is asserted for the first time in response to the Defendants' summary judgment motions.  As such, the claim has been waived and should be disregarded. *See Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2

(10 Cir. 1997) (citing *Charles v. Rice*, 28 F.3d 1312, 1319 (1st Cir. 1994)).

Regardless, there are simply no facts which would support such a claim. An officer who fails to intervene to prevent a fellow officer's use of excessive force may be held liable under § 1983. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). However, an officer's mere presence at the scene where an unlawful use of excessive force is committed by a fellow officer is insufficient to support liability under such a theory. Rather, the officer must have had a realistic opportunity to prevent the alleged use of excessive force before liability may be imposed. *Id*. (citations omitted). Here, there is simply no evidence that Defendant Apple had a realistic opportunity or need to intervene. Again, Apple observed the other officers only using the amount of force that was necessary to control the Decedent who continued to struggle throughout the encounter. (Dkt. 144-11, p. 35:13-21; p. 66:14-17; p. 77:14-16; 78:7-17; p. 114:13-20; p. 116:16-21; p. 126:18 – p. 127:3; p. 127:8-11). He was not present during the first 14 minutes of the encounter when the Decedent was struggling with Officer Shamblin. Apple was present for the approximately five (5) minute period before the Decedent went unconscious. Plaintiff's expert testified that, during that period of time, he did not see evidence in the videos that Officer Denny, Officer Wildcat, Officer Shamblin, or Apple put their body on the Decedent's neck for the six (6) minute period prior to him going unconscious. (Dkt. 185-1, at 213:24 - 214:7). Plaintiffs argue and cite authority holding that that officers should not continue to use force against suspects that are subdued. (Dkt. 157, pp. 22-24). However, Plaintiffs admit that the Decedent struggled against the officers throughout the encounter. (Dkt. 144-18, 135:24-136:10).

Accordingly, Defendant Apple is entitled to summary judgment with regard to Plaintiffs' 42 U.S.C. § 1983 excessive force claim.

## B. Plaintiff's State Law Tort Claims

The Oklahoma Governmental Tort Claims Act ("OGTCA") is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity for its torts and the torts of its employees. *Fuller v. Odom*, 741 P.2d 449, 451-53 (Okla. 1987); *see also* Okla. Stat. tit. 51, § 153(B). The OGTCA adopts and reaffirms the sovereign immunity of the state, its political subdivisions, and all employees acting within the scope of their employment. Okla. Stat. tit. 51, § 152.1(A). The state and its political subdivisions consent to suit only to the extent and in the manner provided in the Act. Okla. Stat. tit. 51, § 152.1(B); *see also Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1065-66 (Okla. 1999). Section 163© of the OGTCA states, in pertinent part: "Suits instituted pursuant to the provisions of this Act shall name as defendant the state or the political subdivision against which liability is sought to be established. **In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant**..." (Emphasis added). *See Carswell v. Oklahoma State University*, 995 P. 2d 1118, 1123 (Okla. 1999); *Parker v. City of Midwest City*, 850 P. 2d 1065, 1066, FN 1 (Okla. 1993). *See also* Okla. Stat. tit. 51, § 153(B) (stating the "liability of the state or political subdivision under this Act shall be exclusive and in place of all other liability of this state, a political subdivision **or employee**, at common law or otherwise." (Emphasis Added)).

Here, there is no evidence that Defendant Apple acted maliciously or outside the scope of his employment with regard to this contact with the Decedent. Accordingly, Defendant Apple in his individual capacity is not a proper party to Plaintiffs' state law tort claims and is immune from suit for same under the terms of the OGTCA.

Furthermore, "[s]uit against a government officer in his or her official capacity is actually a suit against the entity that the officer represents and is an attempt to impose liability upon the governmental entity." *Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008) (citing *Pellegrino v. State ex rel. Cameron University*, 63 P.3d 535, 537 (Okla. 2003)). As such, Defendant Apple in his official capacity is not a proper party to Plaintiffs' state law tort claims and is immune from suit in such capacity pursuant to § 163(c) of the OGTCA. *Id.*

**Plaintiffs' State Law Tort Claim for**
**Intentional Infliction of Emotional Distress**

Plaintiffs have asserted a claim for intentional infliction of emotional distress on their own behalf against Defendant Apple. (Dkt. 3-2).[3] To recover damages for intentional infliction of emotional distress in Oklahoma, a plaintiff must demonstrate that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publications v. Welton*, 49 P.3d 732, 735 (Okla. 2002). The

---

[3] Plaintiffs' claim is for their own emotional distress allegedly suffered as a result of witnessing the death of the Decedent, not for the Decedent's emotional distress.

second element of the tort "requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *Id*. (citation omitted).  The fourth element of the tort "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it." *Id*. at 736 (citation and internal quotation marks omitted).  The Court acts as a gatekeeper to determine, in the first instance, whether there is sufficient evidence of extreme and outrageous conduct and sufficient evidence of severe emotional distress to warrant submitting the issue to a jury:

> The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

*Id*. at 735 (quoting *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377-78 (Okla. 1978).

Here, there is no evidence that Defendant Apple acted in such an extreme and outrageous manner with regard to the Decedent as to support such a claim.  Plaintiffs cite to a comment to the Restatement (2nd) of Torts § 46 which discusses a husband being murdered in front of his wife as an example of a situation where the actor "may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff." (Dkt. 157, p.

32, quoting comment "l" to the Restatement (2nd) of Torts § 46).  Plaintiffs further asserts that "[i]t is undisputed that Plaintiffs watched Apple and the other officers operate in concert to permit the breath to be squeezed from a prone, handcuffed and shackled family member pleading for air." (Dkt. 157, p. 32).  Plaintiffs further argue that "[i]t is hard to imagine anything less [sic] outrageous than engaging in conduct that the actor knows is likely to result in the death of a human being." (*Id*.)  However, in this regard, Plaintiffs are engaged in baseless hyperbole.  There is no evidence in this case that Defendant Apple intended to cause the Decedent's death or that he knew that death was likely to result from the officers' actions.  Again, Defendant Apple's role in the incident was limited to placing shackles upon the Decedent's ankles and standing on the chain for a brief period to prevent the Decedent from kicking his legs.  In that regard, Defendant Apple cannot reasonably have been said to have acted in such an extreme and outrageous manner with regard to the Decedent as to support a claim for intentional infliction of emotional distress.  Furthermore, there is no evidence that the Plaintiffs have suffered severe emotional distress as a result of Defendant Apple's actions.  Without any such evidence, their claim for intentional infliction of emotional distress must fail.

Regardless, Plaintiffs simply cannot recover under a theory of intentional infliction of emotional distress on their own behalf because they were bystanders who suffered no physical injuries in the alleged incident.

> Damages for mental anguish caused by witnessing the suffering of a third party may be compensable where the plaintiff also suffers physical injuries in the same

accident which caused the third party's injuries. To support a cause of action for intentional infliction of emotional distress, it must be established that: 1) the plaintiff was directly physically involved in the incident; 2) the plaintiff was damaged from actually viewing the injury to another rather than from learning of the accident later; and 3) a familial or other close personal relationship existed between the plaintiff and the party whose injury gave rise to the plaintiff's mental anguish.

*Kraszewski v. Baptist Med. Ctr. of Oklahoma, Inc.*, 916 P.2d 241, 250 (Okla. 1996). Here, there is no evidence or allegation that the Plaintiffs were directly physically involved in the alleged use of excessive force against the Decedent. Rather, Plaintiffs' allegations make it clear that they were bystanders who merely witnessed the incident "from a distance of several yards." (Dkt. 3-2, p. 7, ¶ 41; p. 26, ¶ 175). Nor is there any evidence or allegation that the Plaintiffs suffered any physical injury as a result of the incident. Plaintiffs cite *Cleveland v. Dyn-A-Mite Pest Control, Inc.*, 57 P.3d 119, 131 n. 8 (Okla. Civ. App. 2002) as distinguishing the *Kraszewski* case as only "addressing emotional distress which is negligently inflicted" and holding that claims for intentional infliction of emotional distress require no showing of physical injury on the part of the plaintiff. However, both Plaintiffs' argument and the *Cleveland* court's notation are mistaken in that first regard. The *Kraszewski* case did indeed address claims of intentional infliction of emotional distress and held that such claims were not available to bystanders. *Kraszewski*, *supra*. Because the Plaintiffs in this case were bystanders and were not physically involved in the alleged acts of Defendant Apple, they do not have actionable claim for intentional infliction of emotional distress.

Moreover, the Plaintiffs have filed suit as next of kin of the Decedent and as Co-Special Administrators of the Estate of the Decedent, and not on their own behalf. As such, Plaintiffs lack standing in this lawsuit, as filed, to assert a claim for intentional infliction of emotional distress on their own behalf and this Court, therefore, lacks jurisdiction over that claim.[4]

Accordingly, Defendant Apple is entitled to summary judgment with regard to Plaintiffs' state law claim of intentional infliction of emotional distress.

## Plaintiffs' State Law Tort Excessive Force Claim

Oklahoma uses the same "objective reasonableness" standard of care for state law tort excessive force claims as is used for federal excessive force claims. *See Morales v. City of Oklahoma City*, 230 P.3d 869, at 878-881 (Okla. 2010).[5] Here, as discussed above, Plaintiffs simply have no evidence that Defendant Apple used excessive force against the Decedent. The extremely limited amount of force used by Defendant Apple upon the Decedent was objectively

---

[4] While Oklahoma's wrongful death statute provides for damages for grief of the surviving spouse and parents of the decedent (Okla. Stat. tit. 12, § 1053(B)), a claim for intentional infliction of emotional distress for their benefit is not contemplated and not actionable thereunder. As discussed further below, the wrongful death statute does not expand the scope of claims, but merely entitles someone to bring what the decedent could have brought himself had he survived. Had the Decedent in this case survived, he certainly would not have been entitled to bring a claim for the alleged intentional infliction of emotional distress upon the Plaintiffs.

[5] However, in addition to the three (3) specific factors identified in *Graham*, *Morales* identifies four additional specific factors which must be considered as part of the totality of the circumstances: "(4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment. *Morales*, at 880.

reasonable under the totality of circumstances known to Defendant Apple. Accordingly, Defendant Apple is entitled to summary judgment with regard to Plaintiffs' state law tort excessive force claim.

### C. Plaintiffs' Oklahoma Constitutional Excessive Force Claim

In *Bosh v. Cherokee Cnty. Bldg. Auth.*, 305 P.3d 994, 1001 (Okla. 2013), the Oklahoma Supreme Court recognized a limited private right of action arising under Okla. Const. Art. 2, § 30 for claims of excessive force against pre-trial detainees. However, in *Perry v. City of Norman*, 341 P.3d 689 (Okla. 2014) the Oklahoma Supreme Court found that *Bosh* does not provide a private right of action where a cause of action under the OGTCA is available. In *Perry*, the plaintiff claimed that police officers used excessive against him during an arrest. The plaintiff asserted a *Bosh* claim alleging a violation of his rights under Okla. Const. Art. 2, § 30. The Oklahoma Supreme Court noted that the inmate plaintiff in *Bosh* was completely barred from bringing suit under the OGTCA because it provided complete tort immunity for claims arising out of the operation of prison facilities. The court found that, unlike the situation in *Bosh*, employer liability for a police officer's use of excessive force during an arrest was well-settled under the OGTCA and held that: "There is no rationale requiring the extension of a *Bosh* excessive force action brought under Okla. Const. art. 2, § 30 to his cause." *Id*. at 693.

The same rationale applies to the Plaintiffs' purported Oklahoma constitutional claim herein. As *Perry* itself makes clear, governmental liability for claims of excessive force by

police officers (outside of a detention facility) is well-settled under the OGTCA. Because such causes of action are not completely barred under the OGTCA, the rationale underlying *Bosh* does not apply and Plaintiffs do not have a private right of action for excessive force under Okla. Const. Art. 2, § 30.

In response, Plaintiffs argue that the *Bosh* decision "looks not only at the **availability** of a remedy, but also the **adequacy** of the remedy" (Dkt. 157, p. 34, emphasis original), that their remedy under the OGTCA is inadequate because of the OGTCA's damage caps, and that they, therefore, they have a right of action pursuant to *Bosh*. However, Plaintiffs cite no legal authority whatsoever in support of this argument. Contrary to their contention, the *Bosh* opinion simply does not address the issue of the adequacy of remedies under the OGTC. Furthermore, the Oklahoma Supreme Court has held that the OGTCA's damage caps are not arbitrary and do not violate constitutional rights to equal protection or due process. *See Wilson v. Gipson*, 753 P.2d 1349 (Okla. 1988). Not only is Plaintiffs' argument without any legal support, it is directly contrary to the Oklahoma Supreme Court's holding in *Perry*. Moreover, Plaintiffs' argument in this regard is completely undermined by the fact that Defendant Apple would be immune from suit for Plaintiffs' state law excessive force claim under the OGTCA to the extent that he acted within the scope of his employment (*see* Okla. Stat. tit. 51, § 163(c) and, to the extent that he may have acted outside the scope of employment, the OGTCA's tort caps would simply no apply.

Plaintiffs further argue that "Defendant has made the self-defeating argument that 'Plaintiffs' state-law tort claims [under the GTCA] fail" and that "in the unlikely event that Defendant prevails on the latter argument, his [sic] argument that Plaintiffs cannot proceed under Bosh would be moot." (Dkt. 157, p. 34). However, just because Defendant Apple is entitled to summary judgment with regard to Plaintiffs' state law excessive force tort claim does not mean that Plaintiffs had no initially available state law remedy as discussed in the *Perry* decision and, therefore, have private right of action under *Bosh*. As the court explained in *Perry*, it provided incarcerated individuals with a private right of action for excessive force under the Oklahoma Constitution in *Bosh* because such individuals were deprived of a state law remedy *ab initio* due the complete tort immunity provided by the OGTCA's jail exemption. However, non-incarcerated individuals are not so deprived and have a well-recognized claim for excessive force under the OGTCA, and thus have no need for an additional remedy. Plaintiffs have asserted a state law excessive force claim in this case – an additional *Bosh* claim would be redundant.

Moreover, the *Bosh* opinion only held that Oklahoma **governmental entities** can be held liable for the use of excessive force by their employees in violation of the Oklahoma Constitution under a theory of *respondeat superior*, not individual officers such as Defendant Apple. *Bosh, supra*. There are no grounds for so expanding upon the *Bosh* decision where the Oklahoma Supreme Court has not expressed support for any such expansive reading. *See Koch v.*

*Juber*, CIV-13-0750-HE, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) (refusing to expand *Bosh* to provide a private right of action against individual employees under the Oklahoma Constitution). Likewise, to the extent that Plaintiffs are asserting their Bosh claims against Defendant Apple in official capacity they are improper under Oklahoma law and Apple is immune from suit in such capacity. *Speight*, *supra*.; Okla. Stat. tit. 51, § 163©

Accordingly, Defendant Apple is entitled to summary judgment with regard to Plaintiffs' claim for excessive force under Okla. Const. Art. 2, § 30.

### D. Plaintiffs' Wrongful Death Claim and Plaintiff Holly Lynch's State Law Claim for Loss of Consortium

Oklahoma's wrongful death statute, Okla. Stat. tit. 12, § 1053, reads in relevant part:

A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years.

Oklahoma's wrongful death statute "...does not expand the scope of claims or the number of persons entitled to bring an action, but merely entitles someone to bring what the decedent could have brought himself." *Econ. Fire & Cas. Co. v. Faulkner*, 790 F. Supp. 1082, 1085 (W.D. Okla. 1991) *aff'd*, 951 F.2d 1258 (10th Cir. 1991). "Before there is liability under the wrongful death statute, the deceased must have had a right of recovery for the injury at the time of his death." *White v. Equity Fire & Cas. Co.*, 823 P.2d 953, 954 (OK CIV APP 1991) (citing *Haws v.

*Luethje,* 503 P.2d 871, 874–75 (Okla.1972)).

Thus, whether or not Plaintiffs have a viable claim against Defendant Apple under Oklahoma's wrongful death statute depends entirely upon whether or not the Decedent would have had an otherwise viable underlying claim against Defendant Apple under state law.[6] Accordingly, because Defendant Apple is entitled to summary judgment with regard to Plaintiffs' state law claims as set forth herein, he is also entitled to summary judgment with regard to Plaintiffs' claims under the wrongful death statute.

Likewise, Plaintiff Holly Lynch's claim for loss of consortium is not an independent legal claim, but is rather a statutorily defined quantum of damages in Oklahoma's wrongful death statute and is entirely derivative of the Decedent's right of recovery for his injury at the time of his death. *See* Okla. Stat. tit. 12, § 1053(B); *Little v. State Farm Fire and Cas. Co.*, 857 P.2d 65 (Okla. 1993). Because Defendant Apple is entitled to summary judgment with regard to Plaintiffs' state law claims as set forth herein, he is also entitled to summary judgment with regard to Plaintiff Holly Lynch's loss of consortium claim.[7]

### E. Qualified Immunity

Defendants sued in their individual capacities in an action under 42 U.S.C. § 1983 "are

---

[6] Plaintiffs' federal § 1983 claims cannot be brought under Oklahoma's wrongful death statute. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1506-07 (10th Cir. 1990).

[7] Moreover, because Plaintiff Holly Lynch has filed suit as next of kin of the Decedent and as Co-Special Administrator of the Estate of the Decedent, and not on her own behalf, she lacks standing to assert a claim for loss of consortium in this lawsuit, as filed.

entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). Qualified immunity is therefore an affirmative defense that provides immunity to suit in a § 1983 action. *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). When the defense is raised, the plaintiff bears the burden to show the defendant's actions violated a constitutional right, and that the allegedly violated right was clearly established at the time of the conduct at issue. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996). Qualified immunity gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct 532, 537, 116 .Ed. 2d 589 (1991). The issue of qualified immunity is for the courts and not the trier of fact. *Id*.

As a threshold matter, if no constitutional right on the facts alleged would have been violated, no further inquiry is required, and the defendant is entitled to dismissal. *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If a constitutional right could be made out, then "[t]he relative, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official in the defendant's position] that his conduct was unlawful in the situation he confronted." *Id.* at 202; *see also Brousseau v. Haugen*, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (emphasizing inquiry should be conducted in light of the specific context of the case.)

Here, as discussed above, Plaintiffs have failed to show that Defendant Apple violated the Decedent's constitutional rights. Accordingly, Defendant Apple is entitled to qualified immunity and is entitled to summary judgment with regard to Plaintiffs' § 1983 claims. *See Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)) (officer entitled to qualified immunity if their conduct did not violate the law).

Furthermore, Plaintiff has failed to cite to any legal authority which clearly establishes that Defendant Apple's actions amount to a constitutional violation. In *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the U.S. Supreme Court explained that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken." (Internal citations omitted). *See also Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) ("The law is clearly established if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right.").

The legal principle that citizens are to be free from the use of excessive force by government officials is indeed well established; however, the qualified immunity analysis in this regard is analyzed "in a more particularized, and hence more relevant, sense." *Anderson*, 483 U.S. at 640. Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right." *Id. See also Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The question is not whether the Decedent had such a right, but whether it was clearly established that Defendant Apple's alleged actions violated those rights. *Id.* In light of the specific context of this case and the qualified immunity inquiry, Plaintiffs cannot show that Defendant Apple violated the Decedent's clearly established, federal constitutional rights.

The only evidence of any force used by Defendant Apple upon the Decedent was that he placed shackles upon the Decedent's ankles and stood on the chain for a brief period to prevent the Decedent from kicking his legs. However, such action was objectively reasonable in light of the totality of circumstances known to Defendant Apple. The Decedent had assaulted and fought with Officer Shamblin and had continually struggled against the officers attempting to effectuate his arrest, kicking, writhing, yelling and cursing, biting at officers, attempting to grab Officer Wildcat's weapon, and encouraging bystanders to attack Officer Shamblin. Moreover, there is no evidence that Defendant Apple placed the shackles on the Decedent's ankles in an excessively forceful manner. Accordingly, Defendant Apple's actions were objectively reasonable under the circumstances and he is entitled to qualified immunity.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court GRANTS the Defendant Derek Apple's Motion for Summary Judgment in both his official and individual capacities [Dkt. 77].

28

**IT IS SO ORDERED this 21st day of March, 2018.**

James H. Payne
United States District Judge
Eastern District of Oklahoma